**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd. Suite 1121
Los Angeles, California 90066
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice* forthcoming)
Stephanie T. Reed (*pro hac vice* forthcoming)
849 W. Webster Avenue
Chicago, Illinois 60614
(773) 692-7621
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ALVAREZ, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *et seq.* <br> 2. VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, *et seq.* <br> 3. VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.* <br> 4. FRAUD <br> 5. NEGLIGENT MISREPRESENTATION <br> 6. BREACH OF CONTRACT <br> 7. BREACH OF IMPLIED CONTRACT <br> 8. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY <br> 9. QUASI-CONTRACT / UNJUST ENRICHMENT <br><br> **DEMAND FOR JURY TRIAL** |

-1-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Anthony Alvarez ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendant Apple Inc. ("Apple" or "Defendant") and alleges, upon personal knowledge as to his own actions and his counsel's investigation and upon information and good faith belief as to all other matters, as follows:

**INTRODUCTION**

1. For over a decade, Apple has built its brand and commanded a premium price for its products and features on its marketed promise that Apple protects its users' privacy.

2. Apple has, in various but definitive ways, sought to garner good will and market share by assuring consumers that it values and prioritizes consumer privacy. For instance, Apple has proclaimed to consumers that "Privacy. That's iPhone.", that "What happens on your iPhone, stays on your iPhone," and that privacy is a "fundamental human right" and a "core value" designed into every Apple product and feature.[1]

3. A pillar of Apple's privacy marketing is a feature called "Hide My Email."[2]

4. Apple offers its Hide My Email feature in two forms.

5. The first is a bundled version, available to Apple users through "Sign in with Apple." When a user provides an email to a participating app or website, Apple generates a unique, private relay address in place of the user's actual email address that forwards messages to the user's inbox.

6. The second form is an expanded version, included as a core component of every paid iCloud+ subscription. This version allows a subscriber to generate an unlimited number of private relay addresses for any purpose—web forms, newsletters, outgoing mail—so that businesses never receive the user's real email address.

---

[1] *See* Privacy, Apple, https://www.apple.com/privacy/ (last visited July 2, 2026). *See also Apple Keeps Beating the Privacy Drum in Relatable, Clever iPhone Ad*, ADWEEK, https://www.adweek.com/agencies/apple-keeps-beating-the-privacy-drum-in-relatable-clever-iphone-ad/ (last visited July 2, 2026). Apple's widely publicized CES 2019 billboard in Las Vegas read "What happens on your iPhone, stays on your iPhone." *Id.*

[2] The "Hide My Email" feature is bundled with all Apple hardware products when using to "Sign in with Apple" to create accounts on supported third-party apps or websites. *How to use Hide My Email with Sign in with Apple*, Apple, https://support.apple.com/en-us/105078 (last visited July 2, 2026). The paid version of the feature allows for unlimited generation of standalone email addresses. *See You Won't Understand How Valuable Hide My Email is Until You Use It*, Medium (Oct. 7, 2021), https://pcunix.medium.com/you-wont-understand-how-valuable-hide-my-email-is-until-you-use-it-f936159cb4f2.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

7.      Regardless of the version used, Apple makes the same core representations that its Hide My Email feature hides your email from third parties.[3]

8.      Those representations were and are false.

9.      Security researchers have demonstrated that every email address that Hide My Email purports to hide can be unhidden, a finding independently verified by technology journalists who confirmed they could recover a user's actual email address from a Hide My Email generated email address in moments.[4]

10.      Apple promised Hide My Email as a privacy feature customers paid for, whether directly through iCloud+ or indirectly through Apple's product-wide privacy representations, and failed to deliver it.[5]

11.      Worse, Apple has been fully aware of this problem for over a year and has not fixed it.

12.      Security researchers reported the flaw to Apple in June 2025.

13.      Apple acknowledged the report but took no action for nearly a year.

14.      During this time, Apple continued to represent to consumers that Hide My Email would actually hide users' email.

15.      In March 2026, Apple claimed that it had addressed the problem. But, it hadn't.

16.      Apple's response to being told its purported fix had failed was to ask security researchers, once more, to keep silent.

17.      At no point during this period did Apple disable or pause Hide My Email, warn its

---

[3] *See* Privacy – features, Apple, https://www.apple.com/privacy/features/ (last visited July 2, 2026); iCloud+, Apple, https://www.apple.com/icloud/ (last visited July 2, 2026); *How to use Hide My Email with Sign in with Apple*, *supra* note 2.

[4] Joseph Cox, *Apple 'Hide My Email' Vulnerability Reveals Peoples' Real Email Addresses*, 404 Media (July 1, 2026), https://www.404media.co/apple-hide-my-email-vulnerability-reveals-peoples-real-email-addresses/.

[5] Cox, *supra* note 4. *See also* Lucas Ropek, *Apple's Hide My Email feature has a bug that's been exposing real email addresses, researcher claims*, TechCrunch (July 1, 2026), https://techcrunch.com/2026/07/01/apples-hide-my-email-feature-has-a-bug-thats-been-exposing-real-email-addresses-researcher-claims/; *Hide My Email Vulnerability Exposes Real Email Addresses*, MacRumors (July 1, 2026), https://www.macrumors.com/2026/07/01/hide-my-email-vulnerability-exposes-real-addresses/.

-3-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

customers of the flaw, or correct its privacy representations.

18.    As of the filing of this Complaint, the vulnerability remains unremediated and Hide My Email continues to be sold as a core feature of Apple's privacy-protective ecosystem and of iCloud+ subscriptions.[6]

19.    Apple continues to hold itself out as a company built on consumer privacy and continues to mislead consumers into believing that Hide My Email in-fact keeps their email addresses hidden and private.

20.    Apple has known of the problem for over a year, and the flaw remains unfixed to this day—all while Apple continues to profit from Hide My Email and from its promises of privacy.

21.    Plaintiff is one of the millions of customers who paid Apple for iCloud+ and relied on Apple's representations that Hide My Email would keep his personal email address hidden.

22.    Plaintiff and Class Members paid Apple for their privacy—iCloud+ subscribers though the price-premium built into iCloud+ subscription fees, and all Apple customers through the price premium built into Apple products that Apple markets as including enhanced privacy protections and features such as Hide My Email.

23.    Plaintiff brings this action and asserts claims under California statutory and common law, and seeks, on behalf of four Classes defined below, monetary damages to recover the unlawful price premium and subscription costs that consumers paid for Apple's mirage of email privacy as well as injunctive relief to ensure Apple ceases its deceptive conduct and either delivers the privacy protection it promised or clearly discloses that it cannot.

*        *        *

24.    **The Feature.** Hide My Email launched in September 2021 alongside iOS 15 and macOS Monterey, as part of Apple's rebranded, paid "iCloud+" subscription tier. Apple marketed the 2021 release as advancing "its privacy leadership," and positioned Hide My Email, together with iCloud Private Relay and Mail Privacy Protection, as evidence that privacy has not become merely a marketing slogan but "a business advantage" and a core differentiator of Apple's

---

[6] Cox, *supra* note 4. *See also* MacRumors, *supra* note 5; *Apple's 'Hide My Email' feature May Reveal Users' Real Addresses*, Gizmodo (July 1, 2026), https://gizmodo.com/apples-hide-my-email-feature-may-reveal-users-real-addresses-2000780291.

-4-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

products.[7] A separate, bundled version of Hide My Email predates the iCloud+ launch by two years. It has existed since iOS 13 in 2019 as a built-in extension of "Sign in with Apple," and remains available to all users of Apple's hardware products, independent of any iCloud+ subscription.[8]

25.    **How It Works.** When a user signs up for an app, website, or newsletter, Hide My Email generates a unique, random forwarding address (historically ending in @icloud.com or @privaterelay.appleid.com domain). Email sent to that alias is forwarded to the user's real inbox, while—as Apple represents—the user's real, personal email address remains hidden. Each alias is unique to a single use of the feature. Apple positions itself as the single trusted intermediary between the consumer's real identity and the businesses that want it. Whether purchased through iCloud+ or bundled as part of Apple's hardware ecosystem, that promise does not change. In its bundled form, through "Sign in with Apple," the feature generates a relay address only when the user provides an email address to a participating app or website, and each address is tied to that single developer. In its iCloud+ form, the feature is unlimited, a subscriber can generate a private relay address on demand—independent of any app sign-in—for newsletters, web forms, or sending mail, and may create as many addresses as desired. In both forms, Apple represents that the user's real, personal email address remains hidden from the recipient.[9]

26.    **Why Consumers Rely On It.** Apple markets Hide My Email as protection against harms such as spam emails, unwanted tracking, sale of personal data to data brokers, and exposure of a personal email address in a third-party data breach. Consumers use the feature to sign up for

---

[7] *See* Press Release, Apple, *Apple Advances Its Privacy Leadership With iOS 15, iPadOS 15, macOS Monterey, and watchOS 8* (June 7, 2021), https://www.apple.com/newsroom/2021/06/apple-advances-its-privacy-leadership-with-ios-15-ipados-15-macos-monterey-and-watchos-8/. *See also* Kif Leswing, *Apple Is Turning Privacy Into a Business Advantage, Not Just a Marketing Slogan*, CNBC (June 7, 2021), https://www.cnbc.com/2021/06/07/apple-is-turning-privacy-into-a-business-advantage.html.

[8] *See How to use Hide My Email with Sign in with Apple*, *supra* note 2. *See also* Rene Ritchie, *You Don't Need iCloud+ for 'Hide My Email' in iOS 15*, iDropNews (June 26, 2021), https://www.idropnews.com/how-to/you-wont-need-to-use-icloud-mail-for-ios-15s-hide-my-email-feature-heres-how-you-can-set-it-up-now/161653/.

[9] *See How to use Hide My Email with Sign in with Apple*, *supra* note 2; *Create and Manage Hide My Email Addresses in Settings on iPhone*, Apple Support, https://support.apple.com/guide/iphone/create-and-manage-hide-my-email-addresses-iphcb02e76f7/ios (last visited July 2, 2026); *see also* Cox, *supra* note 4.

-5-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

sensitive accounts and websites without linking them to their real identity, to avoid harassment, and to maintain their privacy, among other reasons. The value of the feature depends on one thing being true—that the random alias cannot be traced back to the user's real email address. Once a real email address is exposed, it can be cross-referenced against free, publicly accessible people-search and data-broker sites to reveal a person's name, location, and other personal details—defeating the entire privacy purpose of the feature and placing at particular risk the users who depend on it.[10]

27.   **Availability and Price.** Hide My Email is offered as both a paid, premium feature for the alleged full capacity of the tool, as well as a bundled feature. Every paid iCloud+ tier—ranging in the United States from $0.99 per month (50GB) to $59.99 per month (12TB)—unlocks the same suite of iCloud+ privacy features, including the full, unlimited version of Hide My Email, month after month for as long as the subscription continues. Apple markets Hide My Email as a core iCloud+ feature, advertising it alongside—and as part of the justification for—iCloud+'s price. The bundled 5GB iCloud tier, included with every iPhone and Apple computer, also offers Hide My Email, but only through "Sign in with Apple." Both the paid, unlimited iCloud+ version and the bundled version are at issue here, and Apple markets both as part of its advertised privacy suite. Consumers paid Apple for that advertised privacy in two ways: (1) iCloud+ subscribers paid, month after month, for a subscription Apple represented would deliver Hide My Email's privacy protection; and (2) all Apple hardware users—including those who only used the bundled version—paid a price premium to purchase Apple products that Apple markets, and prices, as offering enhanced privacy protections and features, including Hide My Email. Either way, consumers paid Apple for privacy protection that Apple represented Hide My Email would deliver, and did not.[11]

28.   **Challenged Representations.** Beginning in or about 2019 and continuing through the present, Apple has represented across its official website, product pages, support pages, press releases, and privacy marketing that Hide My Email keeps a user's real, personal email address hidden and private from the apps, websites, and businesses with which the user interacts. The

[10] *See* Cox, *supra* note 4 (quoting Tyler Murphy that "publicly accessible people-search sites make it easy to link an email address to other personal details"); *see also* Ropek, *supra* note 5.

[11] iCloud+ Plans and Pricing, Apple Support, https://support.apple.com/en-us/108047 (last visited July 2, 2026).

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

challenged representations ("Challenged Representations") include, but are not limited to:

    a.  The name of the feature itself, "Hide My Email."

    b.  "Hide My Email allows you to create unique, random email addresses" so users can send and receive email "without having to share your real email address."[12]

    c.  "Hide My Email: Keep your personal email address private," listed as an included iCloud+ feature under the banner "More privacy. More protection. More peace of mind."[13]

    d.  "Instantly generate unique, random email addresses that forward to your personal inbox – so you don't have to share your real email address when filling out a form on the web or signing up for a newsletter."[14]

    e.  "Each relay address is unique to the user and to the developer, so it can't be used for tracking a user across apps or matching with other profile information tied to a personal email address."[15]

    f.  On Apple's support pages, that Hide My Email keeps the user's "personal email private," that the user's "personal email address is kept private," that only the app or website that created the account can use the unique address to communicate with the user, and that Apple deletes relay messages after delivery, usually within seconds.[16]

    g.  Apple's overarching privacy brand representations, including "Privacy. That's iPhone." and "What happens on your iPhone, stays on your iPhone," and Apple's statements that privacy is "a fundamental human right" and "core value"

---

[12] *See* Privacy – features, *supra* note 3.

[13] iCloud+, *supra* note 3.

[14] *How to use Hide My Email with Sign in with Apple*, *supra* note 2; Privacy – features, *supra* note 3.

[15]    *Sign in with Apple*, Apple (Nov. 2019) https://www.apple.com/privacy/docs/Sign_in_with_Apple_White_Paper_Nov_2019.pdf.

[16] *How to use Hide My Email with Sign in with Apple*, *supra* note 2; *Create and Manage Hide My Email Addresses in Settings on iPhone*, *supra* note 9.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

that Apple designs its products and features to protect, and that Apple is "committed to protecting your data."[17]

29.    The Challenged Representations were widely and prominently disseminated each time the "Hide My Email" feature is used, throughout Apple's official website, product and support pages, press releases, and its long-running, mass-market "Privacy. That's iPhone" advertising campaign, which has run across television, YouTube, billboards, and other channels. Apple's privacy messaging was viewed widely by the public, as Apple intended, and formed a central pillar of Apple's brand identity and premium pricing.

30.    **The Falsity.** The Challenged Representations are false and misleading because Hide My Email did not, and does not, keep a user's real email address private and hide their email. A vulnerability in the implementation of Hide My Email allows almost anyone, without elevated privileges or insider access, to link a Hide My Email alias back to the user's real email address. Independent testing found that 100% of the aliases examined were exploitable. An essential function consumers paid for—keeping the personal email address hidden and private—did not work.[18]

31.    **Apple's Knowledge.** Apple knew of the feature's failure. The security researcher who discovered the vulnerability reported it to Apple with reproduction instructions in June 2025. Apple acknowledged the report approximately one month later and said it was investigating. After nearly a year of inaction, concealment, and continued representations to the public, in March 2026, Apple represented that it had "addressed the reported issue in a recent system change," but the researcher confirmed the flaw was not fixed and provided further information. In May 2026, Apple stated it was still investigating and asked the researcher not to disclose the issue "to avoid placing our customers at risk." When the researcher asked whether Apple would stop new sales of Hide My Email until the problem was fixed "[t]o . . . limit the number of customers at risk," Apple did not do so. At the end of May 2026, Apple said it planned to address the issue in a future security update "expected in the coming weeks." That did not occur and the researcher went public in July

---

[17] *See* Privacy, *supra* note 1. Privacy – features, *supra* note 3; *see also* ADWEEK, *supra* note 1.

[18] *See* Cox, *supra* note 4; Ropek, *supra* note 5.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

2026 after more than twelve months without a fix.[19]

32. **This Is a Pattern.** Apple's conduct is consistent with a documented pattern of privacy features that did not perform as Apple represented. For example, in 2023 researchers concluded that an Apple feature that was supposed to anonymize users' Wi-Fi connections with randomized MAC addresses was, in practice, exposing the real identifier. Apple has built a large part of its reputation, branding, and pricing on privacy, and it has repeatedly fallen short of the privacy promises on which it sells.[20]

33. Apple deceived millions of consumers into paying for a premium privacy feature that did not do the one thing Apple promised it would do, in violation of false advertising and consumer protection laws. It deceived millions more into paying a premium for a product with bundled privacy features that likewise did not perform as promised, in further violation of false advertising and consumer protection laws.

34. **Consumer Demand for Privacy.** Consumers increasingly make purchasing decisions based on privacy. "A Pew study from 2020 said that 52% of Americans decided not to use a product or service because of concerns over data protection." Apple has positioned privacy as a differentiator against competitors and, turning privacy "into a business advantage." Apple charged a premium for privacy features precisely because it knew privacy was material to consumers.[21]

35. **Regulatory Backdrop.** The risks of proliferation of false privacy-related representations in the consumer market are well known. The California Attorney General and the California Privacy Protection Agency have repeatedly enforced California's consumer-protection and privacy laws against companies that misrepresented, or failed to honor, their privacy and data-

---

[19] *See* Cox, *supra* note 4 (setting out June 2025 report, Apple's acknowledgment, its March 2026 claim that issue had been "addressed," and its subsequent statements). *See also* MacRumors, *supra* note 5; Gizmodo, *supra* note 6.

[20] *See* Ropek, *supra* note 5 (reporting 2022 class action alleging iPhone apps continued transmitting analytics data with "iPhone Analytics" setting disabled and 2023 research concluding Apple's randomized-MAC-address feature was effectively "useless"); *see also* Gizmodo, *supra* note 6.

[21] *See* Leswing, *supra* note 7 (citing 2020 Pew Research Center study that 52% of Americans decided not to use a product or feature over data-protection concerns).

-9-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

protection promises, including enforcement actions and settlements premised on misleading consumers about how their personal information is protected. Apple, founded and based in California, should be intimately familiar with these laws. It nonetheless represented that Hide My Email kept consumers' personal email addresses hidden and private while knowing that it did not.[22]

36.    The risks of continued false-privacy representations after a company has been warned of their flaws by security researchers are also well known. For example, the Federal Trade Commission charged another consumer technology company, Snapchat, with consumer deception claims after it continued to misrepresent that its messages disappeared forever, even after a security researcher notified the company that they did not.[23] Apple, as one of the world's largest technology companies, should be no less familiar with this precedent than it is with California's own privacy statutes. It nonetheless continued to market Hide My Email as fully effective long after being placed on notice that it was not.

**PARTIES**

37.    Plaintiff Anthony Alvarez is and was at all relevant times, an individual and resident of the City of San Diego in San Diego County, California. Plaintiff intends to remain in California.

38.    Defendant Apple Inc. is an active California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California and in this judicial district.

39.    At all relevant times, Defendant conducted business in the State of California. Defendant is the owner, developer, marketer, and distributor of the feature, and is the company that created, authorized, and controlled the use of the Challenged Representations. The unfair, unlawful, deceptive, and misleading Challenged Representations were prepared, authorized, and approved by Defendant and its agents, and were disseminated throughout California and the nation to deceive and mislead consumers into subscribing to and using the feature.

---

[22] *See* Privacy Enforcement Actions, Cal. Dep't of Justice, Office of the Att'y Gen., https://oag.ca.gov/privacy/privacy-enforcement-actions (last visited July 2, 2026).

[23] *In re Snapchat, Inc.*, FTC File No. 132-3078, Complaint ¶¶ 6–11, 16–17 (F.T.C. May 8, 2014); *see also* Lesley Fair, *Gone with the Wind?*, *Fed. Trade Comm'n Bus. Blog* (May 8, 2014), *available at* https://www.ftc.gov/business-guidance/blog/2014/05/gone-wind.

-10-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## JURISDICTION AND VENUE

40.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) there are more than 100 members of the Class, (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iv) none of the exceptions apply to this action. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

41.     This Court has personal jurisdiction over Defendant because it conducts business in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the judicial district.

42.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

43.     Venue is independently proper because Section X.B of the iCloud Terms provides that the consumer and Apple submit to the personal and exclusive jurisdiction of the courts located in Santa Clara County, California, for any dispute arising from the agreement.[24]

## DIVISIONAL ASSIGNMENT

44.     Pursuant to Local Rules 3.2(c) and 3.5(b), assignment to the San Jose Division is proper because Defendant maintains its principal place of business in Cupertino, Santa Clara County, and a substantial part of the events giving rise to Plaintiff's claims occurred in Santa Clara County.

## FACTUAL ALLEGATIONS

**A.    APPLE HOLDS ITSELF OUT AS THE PRIVACY COMPANY.**

45.   Apple has, for more than a decade, differentiated itself from its competitors by holding itself out as the guardian of consumer privacy.

---

[24] iCloud Terms and Conditions, Apple (Sep. 15, 2025) https://www.apple.com/legal/internet-services/icloud/en/terms.html.

-11-

46.  Apple's privacy webpage leads with "Privacy. That's Apple," and states that privacy is "a fundamental human right" and a "core value" that Apple designs its products and features to protect. Apple's Chief Executive has publicly described privacy as "a fundamental human right."[25]





---

[25] *See* Privacy, *supra* note 1. *See also* Leswing, *supra* note 7.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

47. Apple has spent enormous sums advertising its privacy stance. Its "Privacy. That's iPhone" campaign—including advertisements such as "Tracked," "Data Auction," and "Flock"—has run on television, YouTube, billboards, and other channels, portraying Apple as the company that protects users from tracking, data brokers, and surveillance.

48. Apple's widely publicized CES billboard proclaimed: "What happens on your iPhone, stays on your iPhone." Industry commentators have recognized that Apple uses "privacy as a USP" (unique selling proposition), and Hide My Email as "a great example of that ethos in action."[26]

49. As widely reported, Apple made privacy "a business advantage," not just a corporate ideal or marketing point, and used privacy features to distinguish its products from Android and Windows competitors and to justify premium pricing.

50. Apple further represents that it is "committed to protecting your data" and that its "products and features include innovative privacy technologies . . . designed to minimize how much of your data we — or anyone else — can access."[27]

**B.      APPLE LAUNCHED AND MONETIZED HIDE MY EMAIL AS A PREMIUM PRIVACY FEATURE.**

51. On June 7, 2021, at its annual Worldwide Developers Conference, Apple announced Hide My Email as part of a suite of privacy features accompanying iOS 15 and macOS Monterey, under the banner of "advance[ing] its privacy leadership." The feature launched in September 2021 as part of Apple's newly rebranded, paid iCloud+ subscription tier.[28]

52. Apple designed Hide My Email to be easy to use, prompting users at the point of sign-up and making the "Use" option more prominent than "Cancel," so that consumers would route their sign-ups through Apple. In doing so, Apple promoted the feature and encouraged consumers to trust and use the feature.[29]

---

[26] *See* Kate O'Flaherty, *Apple Hide My Email: Try These Amazing Tips And Tricks Now*, Forbes (June 4, 2022), https://www.forbes.com/sites/kateoflahertyuk/2022/06/04/apple-hide-my-email-try-these-amazing-tips-and-tricks-now/ (describing Apple's use of "privacy as a USP" and Hide My Email as "a great example of that ethos in action"); ADWEEK, *supra* note 1 (Apple's widely publicized CES 2019 billboard in Las Vegas read "What happens on your iPhone, stays on your iPhone.").

[27] *See* Privacy – features, *supra* note 3. *See also* Leswing, *supra* note 7.

[28] *See* Press Release, *supra* note 7.

[29] *Id.*

53.  Apple charged for that trust. Hide My Email is available as part of a paid iCloud+ subscription, and in a more limited form bundled with every Apple product that offers Sign in with Apple.

iCloud+

**$9.99/month**

## 2TB

Plenty of space for all the family's photos, videos, and files.

Upgrade

Every iCloud+ plan includes Apple Invites, iCloud Private Relay, Hide My Email, Custom Email Domain, and HomeKit Secure Video. And additional plans have even more storage.

Compare all plans

iCloud+

# One powerfully connected experience.

Upgrade today

iCloud is built into every Apple device. It keeps your photos, videos, notes, and more safe, automatically backed up, and available anywhere you go — with 5GB of storage for free. When you upgrade to iCloud+, you get even more storage, unique party invitations with Apple Invites, and enhanced privacy features that protect you and your data. It's all the power of iCloud. Plus.[1]

-14-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

54. Apple's privacy branding drives the sale of Apple's hardware and products themselves. Apple markets privacy as a core reason to buy its products—"Privacy. That's iPhone."—and commands a price premium for those products based in part on the privacy protections and features, like Hide My Email, that Apple represents comes with them.

55. Since Hide My Email is available to all consumers in some capacity, consumers who purchased Apple products—whether or not they paid for iCloud+—paid a price premium in reliance on Apple's privacy representations and were entitled to the functioning of those privacy protections as Apple advertised.

**C.    APPLE REPRESENTED THAT HIDE MY EMAIL KEEPS THE USER'S REAL EMAIL ADDRESS HIDDEN AND PRIVATE.**

56. Across its website, product pages, support pages, and press materials, Apple has consistently represented that the purpose and function of Hide My Email is to keep the user's real, personal email address hidden and private.

57. The name of the feature is a misrepresentation in its own right because it fails to do the very thing it purports to do.

58. Apple represents that Hide My Email generates "unique, random email addresses" so that users do not have to "share your real email address," and that the user's personal email address is kept private.



**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

59. Apple's materials further represent that each relay address is unique to a single app, website, or developer, and that only that app, website, or developer can use the address to communicate with the user.[30]

60. The feature further exposes users' real email addresses through its handling of outgoing mail. When a user sends a message through Hide My Email that includes an attachment, such as a photo, the message is presented as having been sent via Hide My Email and the user's real, personal email address is transmitted to the recipient.

61. This exposure becomes apparent when the recipient replies and the quoted text of the original message carried in the reply reveals that the earlier message was in fact sent from the user's real email address, and not from the Hide My Email relay address. In this way, the very act of using the feature as Apple designed and encouraged defeats the feature's central promise and discloses to the recipient the personal email address that Hide My Email represents it keeps hidden and private.

62. These representations are material. The entire value of Hide My Email and the reason consumers pay the premium for Apple products and the upgrade for iCloud+ rests on the aliases being untraceable to the user's real email address.

63. A random alias that can be resolved back to a real email address provides no privacy protection at all. Instead, it is a false sense of security that leaves users worse off than if they had used no protection because they exposed their email address and information in reliance on a promise of anonymity.

**D. HIDE MY EMAIL DID NOT KEEP REAL EMAIL ADDRESSES HIDDEN AND PRIVATE.**

64. On July 1, 2026, multiple sources reported that a vulnerability in Hide My Email allows almost anyone to discover the real email address that the feature is supposed to hide. 404 Media independently verified the vulnerability using one of its own Hide My Email addresses. The

---

[30] *See* Privacy – features, *supra* note 3. *See also How to use Hide My Email with Sign in with Apple*, *supra* note 2; *Create and Manage Hide My Email Addresses in Settings on iPhone*, *supra* note 9.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

technical details were withheld from publication precisely because the vulnerability remained exploitable and Apple had not fixed it.[31]

65. The researcher who discovered the flaw reported that 100% of the Hide My Email addresses examined included the users' real email addresses. In demonstrations, a real email address was unhidden in moments.

66. This did not require elevated privileges or insider access, meaning ordinary people could resolve supposedly anonymous aliases back to real mailboxes.[32]

67. The consequences are serious. Once a real email address is exposed, it can be cross-referenced against publicly accessible people-search and data-broker sites to reveal a person's name, location, and other personal details.

68. The vulnerability therefore defeats the entire privacy purpose of Hide My Email and places at heightened risk exactly the users who rely on it most.[33]

**E.    APPLE KNEW FOR MORE THAN A YEAR AND CHOSE SILENCE OVER DISCLOSURE.**

69. According to the researcher's contemporaneous communications with Apple, the timeline is as follows:[34]

a.    **June 2025:** The researcher reported the vulnerability to Apple, including instructions to reproduce it.

b.    **July 2025 (approx.):** Apple acknowledged the report and stated it was "looking into" the issue.

c.    **March 2026:** Apple represented that it had "addressed the reported issue in a recent system change." The researcher tested and found the issue was not fixed and provided additional information; Apple again said it was looking into it.

d.    **May 2026:** Apple stated it was "still investigating" and asked the researcher not to disclose the issue "[t]o avoid placing our customers at risk" until Apple's investigation was complete. When the researcher asked whether ending new sales

---

[31] Cox, *supra* note 4; Ropek, *supra* note 5.

[32] Cox, *supra* note 4; Ropek, *supra* note 5.

[33] Cox, *supra* note 4.

[34] Cox, *supra* note 4 (timeline based on reporting researcher's contemporaneous correspondence with Apple, as shared with 404 Media). *See also* MacRumors, s*upra* note 5; Gizmodo, *supra* note 6.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

of Hide My Email until the fix was ready "would be an effective way to limit the number of customers at risk," Apple did not stop sales.

e. **Late May 2026:** Apple said it planned to address the issue in a future security update "expected in the coming weeks."

f. **July 1, 2026:** After more than twelve months without a fix, the researcher went public, stating that users "deserve to know that it may be possible for attackers to discover their hidden email addresses."

70. Throughout this period, Apple: (i) continued to advertise and sell iCloud+ and Hide My Email using the Challenged Representations; (ii) declined to disable or pause the feature or its sale even when expressly asked whether doing so would protect customers; (iii) never warned its paying subscribers; (iv) never corrected or qualified its privacy representations; and (v) continued to prominently advertise Hide My Email as a feature of its premium iCloud+ subscription.

71. Apple's own request that the flaw remain undisclosed "to avoid placing our customers at risk" demonstrates Apple's knowledge that its customers were, in fact, at risk—while Apple simultaneously continued to sell them the very feature it knew was failing.[35]

**F.     REPRESENTATIVE PLAINTIFF'S EXPERIENCE**

72. Plaintiff is an iPhone user and subscriber to the 200GB tier of iCloud+. He most-recently purchased an iPhone on or around March 15, 2025 and subscribed to iCloud+ on that device on or around the same date.

73. Plaintiff places significant value on protecting his personal information and online privacy. Prior to purchasing his Apple devices and subscribing to iCloud+, Plaintiff researched available smartphone platforms and privacy ecosystems and considered the privacy protections offered by competing manufacturers and service providers.

74. Plaintiff was exposed to and relied upon Apple's privacy-focused representations in deciding to purchase an iPhone rather than a competing smartphone. Plaintiff understood and believed that Apple's products and services offered materially greater privacy protections than competing products.

75. Plaintiff also subscribed to iCloud+ because Apple represented that the subscription included privacy-enhancing features designed to protect users' personal information. Among the

---

[35] *See* Cox, *supra* note 4.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

features that influenced Plaintiff's purchasing decision and continued use of the service was Hide My Email, which Apple represented would allow users to hide their actual email addresses.

76.    Protecting the confidentiality of his actual email address was an important reason Plaintiff purchased Apple products and iCloud+ and used Hide My Email. Plaintiff relied on Apple's representations concerning the ecosystem's and feature's privacy protections when deciding to purchase Apple products and subscribe to iCloud+ and when deciding to use Hide My Email in connection with websites, applications, and online accounts.

77.    Plaintiff uses both the bundled and subscription versions of the feature in reliance on Apple's representations that Hide My Email would keep his real, personal email address hidden and private.

78.    Plaintiff used the Hide My Email feature in reliance on Apple's representations that Hide My Email would keep his real, personal email address hidden and private.

79.    Had Plaintiff known that Hide My Email allegedly failed to protect his actual email address in the manner represented by Apple, Plaintiff would not have purchased an iPhone at the price he paid, would not have subscribed to iCloud+, or, at a minimum, would have paid substantially less for those products and services.

80.    As a direct result of Apple's alleged misrepresentations and omissions concerning the privacy protections provided by Hide My Email, Plaintiff paid more for his iPhone and iCloud+ subscription than he otherwise would have paid and did not receive the privacy protections that formed part of the benefit of the bargain for which he paid.

**G.    PLAINTIFF AND CONSUMERS WERE MISLED TO THEIR DETRIMENT.**

81. **Reasonable Consumer's Perception.** The Challenged Representations lead reasonable consumers, like Plaintiff, to believe that Hide My Email keeps their real, personal email address hidden, private and untraceable, as Apple claims in its marketing of its privacy features.

82. **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding whether to subscribe to and/or continue subscribing to iCloud+ and use Hide My Email. Apple knew that a claim that its feature would keep a personal email address private would be material to the public given the high value consumers place on privacy and used

its privacy branding to drive subscriptions and to obtain an unfair competitive edge over other providers.

83. **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to subscribe to and/or continue subscribing to iCloud+ and use Hide My Email.

84. **Falsity.** The Challenged Representations are deceptive because Hide My Email does not keep the user's real, personal email address hidden and private, as Apple represented.

85. **Consumers Lack Knowledge of Falsity.** The Class who subscribed to iCloud+ and used Hide My Email, including Plaintiff, did not know and had no reason to know, at the time, that the Challenged Representations were false, misleading, deceptive, and unlawful.

86. **Defendant's Knowledge.** Apple knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time it marketed, advertised, and sold the feature using the Challenged Representations. Indeed, Apple had actual knowledge of the vulnerability from no later than June 2025 and continued to make the Challenged Representations and to sell the Service thereafter.

    a. **Knowledge of Reasonable Consumers' Perception.** Apple knew or should have known that its representations regarding Hide My Email would cause consumers to believe that the feature kept their personal email address private and would induce consumers to subscribe and pay.

    b. **Knowledge of Falsity.** Apple advertised and sold Hide My Email as keeping the user's personal email address private while knowing, from no later than June 2025, that a vulnerability allowed that address to be exposed.

    c. **Knowledge of Materiality.** Apple knew or should have known of the Challenged Representations' materiality to consumers. Apple advertised privacy as a way to enhance sales of its products and services, knowing that consumers highly value privacy and would pay a premium for it.

    d. **Defendant's Continued Deception, Despite Its Knowledge.** Apple, as the developer and marketer of the feature, had exclusive control over the Challenged Representations and could readily have stopped using them, disclosed the defect, or paused sales. Instead, despite its knowledge of the falsity and of consumers' reasonable reliance, Apple deliberately chose to continue marketing and selling the feature with the Challenged Representations, thereby misleading consumers into subscribing to or overpaying for the feature.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

87. **Detriment.** Plaintiff and similarly situated consumers would not have subscribed to iCloud+ or used Hide My Email, or would not have paid a price premium, if they had known that the Challenged Representations were false and that Hide My Email did not keep their personal email address hidden and private. Accordingly, based on the Challenged Representations, reasonable consumers, including Plaintiff, subscribed to and used the feature to their detriment.

**H.    NO ADEQUATE REMEDY AT LAW.**

88. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately two and six years. Nationwide Class Members who subscribed prior to the furthest reach-back under the statute of limitations for breach of warranty will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein, including Apple's overall unfair scheme to market and brand its products and services with the Challenged Representations, across many media platforms, over a long period of time. Thus, Plaintiff and Class Members may be entitled to restitution under the UCL while not entitled to damages under other causes of action (e.g., the FAL requires actual or constructive knowledge of falsity; the CLRA is limited to certain transactions). Similarly, unjust enrichment/restitution is broader than breach of warranty, which may require privity or pre-suit notice.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate because Apple continues to make the Challenged Representations while, on information and belief, the vulnerability remains unremediated. Injunctive relief—including an order requiring Apple to fix the feature or clearly disclose that it cannot keep personal email addresses private, and a corrective advertising campaign—is necessary to prevent ongoing and future harm that cannot be achieved through monetary damages alone.

d. **Public Injunction.** Because a "public injunction" is available under the UCL, damages will not adequately benefit the general public in a manner equivalent to an injunction.

e. **California vs. Nationwide Classes Claims.** The California Class Members may ultimately assert additional claims based on California state law in addition to those asserted by the Nationwide Classes. Dismissal of further-reaching claims, would bar recovery for non-California members of the Classes.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** This is an initial pleading, and discovery has not yet commenced. No class has been

-21-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

certified. The completion of discovery and class certification are necessary to finalize and determine the adequacy and availability of all remedies. Plaintiff reserves the right to amend and to present proof, to the extent necessary, prior to trial of any equitable claims.

## CLASS ALLEGATIONS

89.    **Class Definitions.** Plaintiff brings this proposed class action lawsuit pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated as members of the Classes as defined below:

   a.   **Nationwide Class**: All residents of the United States who, within the applicable statute of limitation period, purchased an Apple product and used the Hide My Email feature (the "Nationwide Class");

   b.   **California Subclass**: All residents of California who, within the applicable statute of limitation period, purchased an Apple product and used the Hide My Email feature (the "California Subclass");

   c.   **Nationwide iCloud+ Subclass**: All residents of the United States who, within the applicable statute of limitations periods purchased an iCloud+ subscription and used the Hide My Email feature (the "Nationwide iCloud+ Class");

   d.   **California iCloud+ Subclass**: All residents of California who, within four years prior to the filing of this action, purchased an iCloud+ subscription and used the Hide My Email feature (the "California iCloud+ Subclass").

90.    Collectively, the Nationwide Class, the California Subclass, the Nationwide iCloud+ Subclass, the California iCloud+ Subclass are referred to as the "Classes." The Nationwide iCloud+ Subclass and the California iCloud+ Subclass are referred to as the "iCloud+ Classes." The California Subclass and the California iCloud+ Subclass are referred to as the "California Subclasses."[36]

91.    Excluded from the Classes are: (i) any Judge or Magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits

---

[36] Plaintiff reserves the right to amend or otherwise alter the foregoing "Class Allegations" and "Class Definitions" based on facts learned through additional investigation and in discovery.

-22-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

92. **Ascertainability**: Class Members can easily be identified by examination of the business records regularly maintained by Apple, among other records within Apple's possession, custody, or control. Apple maintains subscription and account records identifying iCloud+ subscribers and users of Hide My Email, including their Apple Account email addresses and billing information.

93. **Numerosity**: The exact number of the members of the Classes is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Apple has many thousands of users who fall into the definition of the Classes. Members of the Classes can be identified through Apple's records.

94. **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiff and the alleged Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the members of the Classes include, but are not necessarily limited to the following:

a. Whether Apple engaged in unlawful, unfair, or deceptive business practices by advertising and selling the feature;

b. Whether Apple's advertising and selling of the feature was false or deceptive;

c. Whether Apple's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code § 1750, *et seq.*;

d. Whether Apple used deceptive representations in connection with the sale of the feature in violation of Civil Code § 1750, *et seq.*;

e. Whether Apple represented that the feature has characteristics or qualities that it does not have in violation of Civil Code § 1750, *et seq.*;

f. Whether Apple advertised the feature with intent not to sell it as advertised in violation of Civil Code § 1750, *et seq.*;

g. Whether Apple's advertising and marketing of the feature are misleading in violation of Business and Professions Code § 17500, *et seq.*;

h. Whether Apple knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code § 17500, *et seq.*;

i. Whether Apple's conduct is an unfair business practice within the meaning of Business and Professions Code § 17200, *et seq.*;

-23-

j.  Whether Apple's conduct is a fraudulent business practice within the meaning of Business and Professions Code § 17200, *et seq.*;

k.  Whether Apple's conduct is an unlawful business practice within the meaning of Business and Professions Code § 17200, *et seq.*;

l.  Whether Plaintiff and Class Members paid more money for the feature than they actually received;

m.  How much more money Plaintiff and Class Members paid for the feature than they actually received;

n.  Whether Plaintiff and Class Members are entitled to injunctive relief; and

o.  Whether Apple was unjustly enriched by its unlawful conduct.

95.    **Typicality**: Plaintiff's claims are typical of the claims of members of the Classes. The claims arise from a common nucleus of operative fact—payment for and use of Apple's misleading and deceptive features and products. Apple's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and members of the Classes sustained similar injuries arising out of Apple's conduct, and their claims arise from the same practices and course of conduct and are based on the same legal theories. Plaintiff's claims are typical of the claims of all members of the Classes because every Class Member was exposed to the same Challenged Representations and the same failure of Hide My Email to keep personal email addresses hidden and private, and paid Apple a premium (through an iCloud+ subscription or the purchase of Apple products marketed as including enhanced privacy features) for privacy protection they did not receive.

96.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Classes. That is, Plaintiff and the members of the Classes sustained injuries and damages because of Apple's conduct. Plaintiff also has no interests antagonistic to those of the Classes, and Apple has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor their counsel have any conflicts with or interests adverse to the Classes.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

97.     **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Classes is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint as well as the risk of inconsistent adjudication. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Through a class action, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

## GOVERNING LAW

98.     Section X.B of the Apple's iCloud Terms and Conditions ("iCloud Terms") provides that the agreement and relationship between the user and Apple are governed by the laws of the State of California, excluding its conflict of laws provisions.[37] Because Apple's governing-law provision selects California law, California substantive law governs the claims of all members of the Classes regardless of their state of residence. Plaintiff therefore asserts each claim, and/or certain claims, alleged herein on behalf of himself and the Classes under California law. Alternatively, Plaintiff asserts each claim, and/or certain claims, alleged herein on behalf of himself and the California Subclasses under California law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(*On Behalf of Plaintiff & the Classes*)**

99.     Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

100.     Plaintiff brings this claim individually and on behalf of the members of the Classes.

---

[37] iCloud Terms and Conditions, *supra* note 24.

-25-

101.    The California Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

102.    Apple, in its pervasive advertising and marketing of its Hide My Email feature, made misleading statements regarding the quality and characteristics of the feature—specifically, the Challenged Representations that Hide My Email keeps the user's personal email address hidden and private.

103.    In fact, the feature lacked that advertised functionality, failing to keep personal email addresses hidden and private as represented. Contrary to Apple's privacy claims, the feature offered a materially deficient version of the promised protection, misleading consumers about its actual utility and performance.

104.    Apple does not have any reasonable basis for the claims made in its advertising because the feature lacks the advertised privacy functionality.

105.    Apple knew (and knows) that Hide My Email does not keep personal email addresses hidden and private, having been notified of the vulnerability with reproduction instructions no later than June 2025.

106.    Yet Apple continued and continues to advertise and market the feature deceiving reasonable consumers.

107.    Apple's advertising and marketing led, and continues to lead, reasonable consumers, including Plaintiff, to believe that the feature keeps their personal email address hidden and private, and thus to subscribe to and use it.

108.    Plaintiff and the members of the Classes have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations—namely, the price paid for the iCloud+ subscription and its privacy features, or the price premium paid to purchase Apple products that Apple marketed as including enhanced privacy protections and features such as Hide My Email.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

109. Apple's conduct constitutes unfair, unlawful, and fraudulent business practices under the UCL.

110. Apple's use of various forms of advertising media to promote the feature in a manner not as represented constitutes unfair competition; unfair, deceptive, untrue, or misleading advertising; and an unlawful business practice within the meaning of Business and Professions Code §§ 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public.

111. Apple failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

112. All of the conduct alleged herein occurred and continues to occur in Apple's business. Apple's wrongful conduct is part of a pattern, practice, and generalized course of conduct, which will continue until Apple voluntarily alters its conduct or is otherwise ordered to do so.

113. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff and the Classes seek an order enjoining Apple from continuing its practice of false and deceptive advertising and marketing of the feature and requiring Apple to disclose the misrepresentations.

114. As a direct and proximate result of Apple's misconduct in violation of the UCL, Plaintiff and members of the Classes were harmed in the amount of the price they paid for the feature and overpaid for iCloud+ and/or Apple's purportedly privacy-protective products, and continue to suffer economic losses, in an amount to be proven at trial. Plaintiff seeks a monetary award in damages, restitution, and disgorgement of ill-gotten gains, as well as injunctive relief.

115. Apple's unfair, fraudulent, and unlawful conduct constitutes malicious, oppressive, or fraudulent conduct warranting punitive damages as permitted by law. Apple acted with the intent to cause consumers to pay for a privacy protection they were not receiving; willfully and knowingly disregarded consumers' rights while aware of the probable consequences of its conduct; and intentionally misrepresented or concealed material facts with the intent to deceive. The wrongful conduct was committed, authorized, adopted, approved, or ratified by officers, directors, or managing agents of Apple.

**"Unfair" Prong**

-27-

116. Under the UCL, a challenged activity is "unfair" when any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid.

117. Apple's conduct of falsely advertising the feature with the Challenged Representations encouraged consumers to pay for privacy protection that would perform as advertised. Because Hide My Email does not keep personal email addresses hidden and private, consumers do not receive a feature commensurate with their reasonable expectations and overpay for it. Consumers could not avoid these injuries, which outweigh any benefits.

118. Apple's conduct of advertising the feature as keeping personal email addresses hidden and private when it does not result in financial harm to consumers, and any utility is vastly outweighed by the gravity of the harm.

119. Apple's conduct contravenes the policies embodied in California's consumer-protection and privacy laws and harms competitors who accurately describe, or actually deliver, their privacy protections.

120. Apple's advertising and marketing of the feature is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Apple knew or should have known of its unfair conduct.

121. Reasonably available alternatives existed, including refraining from the Challenged Representations, disclosing the defect, fixing the feature, or pausing sales.

122. Pursuant to Business and Professions Code § 17203, Plaintiff and the Classes seek an order enjoining Apple from continuing to market the feature with the Challenged Representations.

123. Plaintiff and the Classes have suffered injury in fact, lost money, and received an inferior feature because of Apple's unfair conduct, paying an unwarranted premium. Accordingly, Plaintiff seeks damages, restitution, and disgorgement pursuant to the UCL.

### "Fraudulent" Prong

124. The UCL considers conduct fraudulent if it is likely to deceive members of the public.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

125.    Apple used the Challenged Representations with the intent to sell the feature to consumers. The representations are deceptive, and Apple knew or should have known of its deception. They are likely to mislead consumers into subscribing because they are material to the average, ordinary, and reasonable consumer.

126.    Apple's misrepresentations constitute a fraudulent business practice in violation of Business & Professions Code § 17200.

127.    Plaintiff and the Classes reasonably and detrimentally relied on the material and deceptive Challenged Representations in subscribing to and using the feature.

128.    Apple had reasonably available alternatives to further its legitimate business interests, including refraining from the Challenged Representations.

129.    All of the conduct alleged herein occurs and continues to occur in Apple's business as part of a pattern or generalized course of conduct.

130.    Pursuant to Business and Professions Code § 17203, Plaintiff and the Classes seek an order enjoining Apple from continuing to market the feature with the Challenged Representations.

131.    Plaintiff and the Classes have suffered injury in fact and lost money because of Apple's fraudulent conduct, paying an unwarranted premium for a feature that did not perform as advertised. Accordingly, Plaintiff seeks damages, restitution, and disgorgement pursuant to the UCL.

## "Unlawful" Prong

132.    The UCL makes violations of other laws independently actionable.

133.    Apple's advertising and marketing of the feature violates California Civil Code §§ 1750, *et seq.* (the "CLRA") and California Business and Professions Code §§ 17500, *et seq.* (the "FAL"), as set forth in the counts below.

134.    Apple's use of the Challenged Representations to sell the feature violates California Civil Code §§ 1572 (actual fraud), 1573 (constructive fraud), 1709–1710 (fraudulent deceit), and 1711 (deceit upon the public).

-29-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

135. Apple's deceptive representations constitute a knowing failure to adopt policies in accordance with applicable laws, engendering an unfair competitive advantage and constituting an unfair, fraudulent, and unlawful business practice under Business & Professions Code §§ 17200–17208, and violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated herein.

136. Apple's advertising and marketing of the feature is deceptive, misleading, and unreasonable, and constitutes unlawful conduct. Apple knew or should have known of its unlawful conduct.

137. Apple had reasonably available alternatives to further its legitimate business interests, including refraining from the Challenged Representations.

138. All of the conduct alleged herein occurs and continues to occur in Apple's business as part of a pattern or generalized course of conduct.

139. Pursuant to Business and Professions Code § 17203, Plaintiff and the Classes seek an order enjoining Apple from continuing its deceptive advertising of the feature.

140. Plaintiff and the Classes have suffered injury in fact and lost money because of Apple's unlawful conduct, paying an unwarranted premium. Plaintiff and the Classes would not have subscribed had they known that the feature did not keep their personal email address hidden and private.

141. Accordingly, Plaintiff seeks damages, restitution, and disgorgement pursuant to the UCL.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (*On Behalf of Plaintiff & the Classes*)

142. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

143. Plaintiff brings this claim individually and on behalf of the members of the Classes.

144. The False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising."

145. Apple violated § 17500 when it advertised and marketed the feature through the unfair, deceptive, and misleading Challenged Representations disseminated to the public.

146. These representations were deceptive because the feature does not conform to them, and material because they are likely to mislead a reasonable consumer into subscribing.

147. In making and disseminating the representations, Apple knew or should have known that they were untrue or misleading, and acted in violation of § 17500. Apple had actual knowledge of the vulnerability no later than June 2025.

148. Apple's Challenged Representations were specifically designed to induce reasonable consumers to subscribe to and use the feature.

149. As a direct and proximate result of Apple's misconduct in violation of the FAL, Plaintiff and the California Subclass were harmed in the amount they paid for the feature, and continue to suffer economic losses, in an amount to be proven at trial. Plaintiff seeks damages, restitution, and disgorgement, injunctive relief, and a corrective advertising campaign.

150. Apple's conduct constitutes malicious, oppressive, or fraudulent conduct warranting punitive damages as permitted by law, having acted with intent to cause consumers to pay for a protection they were not receiving, in knowing disregard of consumers' rights, and by intentionally misrepresenting or concealing material facts. The conduct was committed, authorized, adopted, approved, or ratified by officers, directors, or managing agents of Apple.

//

### THIRD CAUSE OF ACTION

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750,** *et seq.*
***(On Behalf of Plaintiff & the Classes)***

151. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

152. Plaintiff brings this claim individually and on behalf of the members of the Classes.

153. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or features to any consumer are unlawful."

-31-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

154. The feature constitutes "goods" or "features" as defined by the CLRA in California Civil Code § 1761 because it was provided by Apple and acquired by Plaintiff and the Class Members primarily for personal, family, or household purposes.

155. Apple is a "person," as defined by the CLRA in California Civil Code § 1761(c), because it is a corporation.

156. Plaintiff and members of the Classes are "consumers," as defined by the CLRA in California Civil Code § 1761(d), because they are individuals who acquired the feature for personal, family, or household purposes.

157. The subscription to and use of the feature by Plaintiff and members of the Classes are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

158. Apple violated the following sections of the CLRA by selling the feature through the misleading, deceptive, and fraudulent Challenged Representations:

   a. Section 1770(a)(5) by representing that the feature has "characteristics, . . . uses [or] benefits . . . which [it does] not have."

   b. Section 1770(a)(7) by representing that the feature is "of a particular standard, quality, or grade . . . [when it is] of another."

   c. Section 1770(a)(9) by advertising the feature "with [the] intent not to sell [it] as advertised."

   d. Section 1770(a)(14) by representing that a transaction confers or involves rights, remedies, or  obligations which it does not have or involve

   e. Section 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

159. Apple's uniform and material representations regarding the feature were likely to deceive, and Apple knew or should have known that its Challenged Representations were misleading.

160. Apple's conduct is malicious, fraudulent, and wanton in that Apple intentionally misled and withheld material information from consumers to increase sales of the feature.

161. Plaintiff and members of the Classes could not have reasonably avoided such injury, were unaware of the suppressed and undisclosed facts, and would not have subscribed or would have subscribed on different terms had they known the truth.

162. Plaintiff and the Classes suffered harm because of Apple's violations of the CLRA because they relied on the Challenged Representations in deciding to subscribe to and use the feature. The Challenged Representations were a substantial factor and were material because a reasonable consumer would consider them important in deciding whether to subscribe.

163. As a direct and proximate result of Apple's misconduct in violation of the CLRA, Plaintiff and members of the Classes were harmed in the amount they paid for the feature. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of restitution and disgorgement of ill-gotten gains.

164. Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief enjoining the above-described wrongful acts and practices, including an order enjoining Apple from continuing to make the misleading claims challenged herein and requiring Apple to undertake a corrective advertising campaign, together with restitution. Unless this injunctive relief is granted, Plaintiff will suffer irreparable harm.

165. Plaintiff respectfully requests that the Court enjoin Apple from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2), and compel Apple to provide restitution to consumers.

166. Plaintiff and members of the Classes are entitled to equitable relief as no adequate remedy at law exists.

167. Injunctive relief is appropriate because Apple has failed to make clear that Hide My Email does not keep personal email addresses hidden and private as advertised. Injunctive relief, including advertising and marketing modifications and a corrective advertising campaign, is necessary to correct past harm and prevent future harm, none of which can be achieved through legal remedies alone. Such modifications would include either providing the privacy protection as advertised or clearly disclosing to consumers that the feature was not capable of the protection advertised.

168.    **CLRA § 1782 NOTICE.** On July 14, 2026, a CLRA demand letter was sent to Apple's California headquarters via certified mail (return receipt requested), that provided notice of Apple's violations of the CLRA and demanded that Apple correct the unlawful, unfair, false or deceptive practices alleged here. If Apple does not fully correct the problem for Plaintiff and for each member of the Classes within 30 days of receipt, Plaintiff and the Classes will seek all monetary relief allowed under the CLRA.

169.    A CLRA venue declaration is attached.

## FOURTH CAUSE OF ACTION

### FRAUD
### (*On Behalf of Plaintiff & the Classes*)

170.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

171.    Plaintiff brings this claim individually and on behalf of the Classes.

172.    Apple affirmatively misrepresented the capabilities of the feature when selling and marketing it, representing that Hide My Email keeps the user's personal email address hidden and private.

173.    Apple knew that its misrepresentations regarding the feature were material, and that a reasonable consumer would rely upon them in making purchasing decisions.

174.    Plaintiff and Class Members did not know, nor could they have known through reasonable diligence, about the true nature of the feature, *i.e.*, that Hide My Email did not keep their personal email address hidden or private.

175.    Plaintiff and Class Members were reasonable in relying on Apple's misrepresentations in making their purchasing decisions.

176.    Plaintiff and Class Members had a right to rely upon Apple's representations, as Apple maintained superior and, as to the vulnerability, exclusive knowledge of the true quality and performance of the feature.

-34-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

177.    Plaintiff and Class Members sustained damages because of their reliance on Apple's misrepresentations, causing actual losses and damages in a sum to be determined at trial, including punitive damages.

## FIFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION
### (*On Behalf of Plaintiff & the Classes*)

178.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

179.    Plaintiff brings this claim individually and on behalf of the Classes.

180.    Apple had a duty to Plaintiff and the Class Members to exercise reasonable and ordinary care in the developing, testing, marketing, distribution, and sale of the feature.

181.    Apple breached its duty to Plaintiff and the Class Members by advertising the feature as having privacy capabilities it does not actually have.

182.    Apple knew or should have known that the qualities and characteristics of the feature were not as advertised, marketed, or otherwise represented, or suitable for their intended use, and were otherwise not as warranted and represented by Apple.

183.    As a direct and proximate result of Apple's conduct, Plaintiff and the Class Members have suffered actual damages in that they would not have subscribed to and used the feature had they known that it does not conform to Apple's marketing, advertising, or statements.

184.    Plaintiff and the Class Members seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT
### (*On behalf of Plaintiff & the Nationwide Class*)

185.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

186.    Plaintiff brings this claim individually and on behalf of the Classes.

-35-

187.   Apple expressly warranted that the Hide My Email feature would perform as advertised. Apple's claims regarding the feature constituted an affirmation of fact, promise, or description that became part of the basis of the bargain and created an express warranty that the feature would conform to the stated promise—namely, that Hide My Email would keep the user's personal email address hidden and private. Plaintiff and the Class Members placed importance on Apple's claims.

188.   All conditions precedent to Apple's liability under this contract, including payment of subscription fees or payment of the purchase price of Apple products marketed as including Hide My Email's privacy protection, have been performed by Plaintiff and the Class Members.

189.   Apple breached the terms of the contract, including the express warranties, by not providing a feature that conforms to the advertising and marketing claims.

190.   As a result of Apple's breach of contract, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT
### (*On behalf of Plaintiff & the Classes*)

191.   Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

192.   Plaintiff brings this claim individually and on behalf of the Classes.

193.   To the extent required by law, this cause of action is alleged in the alternative, as permitted under Fed. R. Civ. P. 8.

194.   Through its conduct, representations, and course of dealings with Plaintiff and the Class Members, Apple entered into an implied contract to provide a Hide My Email feature that would keep users' personal email addresses hidden and private. By marketing and offering Hide My Email as a feature of its products and iCloud+ subscriptions, by making the Challenged Representations regarding the feature's privacy protections, and by accepting payment from Plaintiff and the Class Members, Apple manifested its intent and assent to provide a feature that performed as advertised.

195. The terms of the implied contract obligated Apple to furnish a Hide My Email feature that conformed to its representations, specifically, a feature that would conceal users' personal email addresses and protect them from disclosure. Plaintiff and the Class Members reasonably understood, based on Apple's conduct and representations, that this privacy protection was part of what they were paying for.

196. Plaintiff and Class Members manifested their assent to, and accepted the benefits of, this implied contract by purchasing Apple products marketed as including Hide My Email's privacy protection or by subscribing to and paying for the feature. A mutual understanding and meeting of the minds existed between the parties that, in exchange for such payment, Apple would provide the privacy protections it represented.

197. Plaintiff and Class Members performed all obligations required of them under the implied contract, including payment of subscription fees and/or payment of the purchase price of Apple products marketed as including Hide My Email's privacy protection. Any conditions precedent to Apple's liability have been satisfied, waived, or excused.

198. Apple breached the implied contract by failing to provide a feature that kept personal email addresses hidden and private, contrary to the terms of the parties' agreement and to the reasonable expectations Apple created through its representations. Apple further breached the implied contract by failing to timely remediate the vulnerability of which it had notice.

199. As a direct and proximate result of Apple's breach of the implied contract, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (*On behalf of Plaintiff & the Classes*)

200. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

201. Plaintiff brings this claim individually and on behalf of the Classes.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

202.    Unless excluded or modified, a warranty that a good or feature shall be merchantable is implied in a contract for its sale, if the seller is a merchant with respect to goods or features of that kind.

203.    Apple is a merchant with respect to the feature at issue.

204.    In order to be merchantable, the feature must conform to the promises or affirmations of fact made in its advertising.

205.    Apple breached the implied warranty of merchantability by representing that the feature kept personal email addresses hidden and private when, in fact, it did not.

206.    As a result of Apple's misleading conduct, Plaintiff and the Class Members did not receive a merchantable feature as impliedly warranted by Apple.

207.    Apple did not exclude or modify the feature's implied warranty of merchantability.

208.    Apple received notice of the breach of the implied warranty but did not remediate the breach.

209.    As a proximate result of Apple's breach, Plaintiff and the Class Members incurred damages, having paid for a feature that did not have the promised quality and nature, paid a premium when they could have used other, less expensive or free alternatives, and lost the opportunity to obtain privacy protections that performed as advertised.

210.    Plaintiff and the members of the Classes have been damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION

**QUASI-CONTRACT / UNJUST ENRICHMENT**
***(On behalf of Plaintiff & the Classes)***

211.    Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

212.    Plaintiff brings this claim individually and on behalf of the Classes.

213.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

-38-

214.    Plaintiff and Class Members conferred monetary benefits on Apple by purchasing Apple products and by subscribing to and paying for the feature. A portion of those payments was attributable to Apple's Challenged Representations regarding Hide My Email.

215.    Apple knew that Plaintiff and the members of the Classes conferred a benefit which Apple accepted, and through which Apple was unjustly enriched. Retention of those monies is unjust and inequitable because Apple failed to disclose that, contrary to its representations, Hide My Email did not keep personal email addresses hidden and private; these misleading representations caused injury to Plaintiff and members of the Classes, who would not have subscribed had the true facts been known.

216.    Apple enriched itself by saving the costs it reasonably should have spent on ensuring that the feature performed as advertised and conformed to its representations, including by timely remediating the vulnerability of which it had notice.

217.    Because Apple's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Classes is unjust and inequitable, Apple has been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Anthony Alvarez, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Apple and in favor of Plaintiff and the Class Members, and grant the following relief:

a.  For an order certifying the Classes and naming Plaintiff as the representatives of the putative Classes and Plaintiff's attorneys as Class Counsel to represent the putative Class Members;

b.  For an order declaring that Apple's conduct violates the statutes and laws referenced herein;

c.  For an order finding in favor of Plaintiff and the Class Members on all counts asserted herein;

d.  For statutory damages in amounts to be determined by the Court or jury;

e.  For prejudgment interest on all amounts awarded;

-39-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

f.   For injunctive relief, restitution, and disgorgement, as pleaded or as the Court may deem proper

g.   For an order awarding Plaintiff and the putative Classes their reasonable attorneys' fees and expenses and cost of suit; and

h.   For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: July 15, 2026

By:  */s/ Victor J. Sandoval*
Victor J. Sandoval, SBN 344461
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd 1121,
Los Angeles, CA 90066
t: (562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice* forthcoming)
Stephanie T. Reed (*pro hac vice* forthcoming)
849 W. Webster Avenue
Chicago, Illinois 60614
t: (773) 692-7621
david@almeidalawgroup.com
stephanie@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Classes*

-40-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**